**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

LINDA ANNETTE WHITE,

                Plaintiff,

v.                                CIVIL ACTION NO.   2:20-cv-00179

MASTEC NORTH AMERICAN, INC.
and PRECISION PIPELINE, LLC,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the Defendants' *Partial Motion to Dismiss* (Document 8), the *Memorandum of Law in Support of Partial Motion to Dismiss* (Document 10), the *Plaintiff's Response in Opposition to Defendants' Partial Motion to Dismiss* (Document 13), and the Defendants' *Reply in Support of Partial Motion to Dismiss* (Document 14).   For the reasons stated herein, the Court finds that the partial motion to dismiss must be denied.

**FACTUAL ALLEGATIONS**

The Plaintiff, Linda Annette White, initiated this action with a *Complaint* (Document 1) filed on March 10, 2020.   She names MasTec North America, Inc. and Precision Pipeline LLC as the Defendants.   Ms. White is a West Virginia resident, MasTec is a Florida corporation, and Precision Pipeline is a Wisconsin corporation and a wholly owned subsidiary of MasTec.

Ms. White was employed as a truck driver by Precision Pipeline and/or MasTec at a job site in Nicholas County, West Virginia.   On July 2, 2019, she tripped on a wooden plank at the

worksite, fell, and rolled several times down a hill.   Her hardhat, glasses, and safety radio were knocked off.   Co-workers helped her gather her gear and helped her up, but her left knee was extremely painful, and she had difficulty standing or walking.   She made her way back to her truck.   Her foreman called after about twenty minutes and she told him her hands were sore from trying to catch herself and her knee was very painful.   She volunteered that she would attempt to ice her knee.   Her foreman did not offer medical treatment.   She remained in her truck for the remainder of the day and did not participate in further work activity.

Later in the afternoon, Ms. White had increasing pain and stiffness throughout her body, and her knee was extensively bruised and swollen.   Over time, her back and neck became increasingly painful and stiff.   Her employer discouraged her from seeking medical treatment, instructing her to continue to report for work, but spend her workdays icing her knee in her truck without performing any duties.   In addition to discouraging her from seeking treatment, the Defendants maintained a policy requiring employees to seek care at specific medical providers chosen by the company.

Around 3:00 a.m. on July 5, Ms. White went to the emergency room at CAMC Memorial in Charleston, West Virginia.   The doctor found no fractures and wrote her a note excusing her from work on July 5 and permitting her to return to work on July 6.   When she called in on July 5, the safety director responded angrily.   He gave her a disciplinary slip when she reported for work on July 6 for seeking medical attention without notifying him and permitting him to be present.   Her union steward prevented the safety director from completing the disciplinary process.

Ms. White returned to her truck, continuing to complain of pain and requested additional care, and, at the direction of the safety director, continued to lay in her truck with ice rather than performing any duties.   On July 9, the safety director told her to report to his office the next morning to go to Med Express.   He stayed with her and spoke with the physician's assistant while she was being examined.   Following a cursory examination, the physician's assistant stated that she should not walk up or down hills or do prolonged walking or standing, and needed a knee brace, ice packs, and Ibuprofen.   The records from the visit excluded her neck from the various areas of pain she reported to the physician's assistant, but the WC-1 form completed that day did include her neck pain.

The safety director kept all of the documents from the medical visit, and Ms. White was unaware that Med Express had given her a written restricted duty work release and instructed her to return in one week.   The Defendants did not send the documents to their workers' compensation insurer or claims administrator.   The Claim Administrator did not receive the forms until July 26 and September 3, negatively impacting Ms. White's claims process when she sought workers' compensation benefits.

Ms. White expressed dissatisfaction with the care provided by Med Express and continued to seek additional care due to her continued pain.   On July 15, she spoke to her union steward about the situation.   That morning, she met with her union steward, the safety director, and two other safety officers.   She was told that she was being laid off for medical reasons and would receive workers' compensation, though the union steward indicated that he did not believe that was a viable plan.   When she called the number provided by the safety director to begin her workers' compensation claim, she was told that her employer intended to contest the claim.   The

Defendants failed to timely supply documentation and medical records that would have supported her claim, including the medical note for restricted duty from Med Express.   She struggled to find covered care providers, in part because the Defendants immediately cancelled her health benefits after terminating her employment.

Eventually, Ms. White saw an orthopedic specialist on September 17, 2019.   He gave her an off-work release for four weeks and instructed her to do physical therapy.   She received temporary total disability for only four days, though her doctor completed documentation of her temporary total disability continuing from September 17 to November 12, 2019 and remaining thereafter, pending further medical treatment for her cervical spine injuries.

Ms. White alleges the following causes of action: Count One – Workers' Compensation Discrimination; Count Two – Discrimination Regarding Her Employment, in violation of West Virginia Code § 23-5A-3(a); and Count Three – Fraud and Deception.   The Defendants filed a motion to dismiss Count Two.   The motion is fully briefed and ripe for review.

## STANDARD OF REVIEW

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a complaint or pleading.   *Francis v. Giacomelli,* 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir. 2008).   Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."   Fed. R. Civ. P. 8(a)(2).   Additionally, allegations "must be simple, concise, and direct."   Fed. R. Civ. P. 8(d)(1).   "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me

4

accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007)).   In other words, "a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."   *Twombly*, 550 U.S. at 555.   Moreover, "a complaint [will not] suffice if it tenders naked assertions devoid of further factual enhancements."   *Iqbal,* 556 U.S. at 678 (*quoting Twombly,* 550 U.S. at 557) (internal quotation marks omitted).

When reviewing a motion to dismiss, the Court must "accept as true all of the factual allegations contained in the complaint."   *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).   The Court must also "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).   However, statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Iqbal,* 556 U.S. at 679.   Furthermore, the court need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments."   *E. Shore Mkts., v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000).   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . [because courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"   *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555).

## DISCUSSION

In Count II of her Complaint, the Plaintiff alleges discrimination in violation of West Virginia Code § 23-5A-3(a).   That statute provides: "It shall be a discriminatory practice within the meaning of section one of this article to terminate an injured employee while the injured employee is off work due to a compensable injury…and is receiving or is eligible to receive

5

temporary total disability benefits, unless the employee has committed a separate dischargeable offense."   W. Va. Code § 23-5A-3(a).   Section 23-5A-3(a) provides: "No employer shall discriminate in any manner against any of his present or former employees because of such present or former employee's receipt of or attempt to receive benefits under this chapter."   The West Virginia Supreme Court has established the following test for workers' compensation discrimination claims:   "In order to make a prima facie case of discrimination under W. Va. Code, 23–5A–1, the employee must prove that: (1) an on-the-job injury was sustained; (2) proceedings were instituted under the Workers' Compensation Act, W.Va.Code, 23–1–1, *et seq.;* and (3) the filing of a workers' compensation claim was a significant factor in the employer's decision to discharge or otherwise discriminate against the employee."   Syl. Pt. 1, *Powell v. Wyoming Cablevision, Inc.*, 403 S.E.2d 717, 718 (W. Va. 1991).

The Defendants argue the protections of § 23-5A-3(a) are unavailable to Ms. White because she was not off work when she was discharged, and she was not receiving or eligible to receive temporary total disability benefits.   They contend that she had not yet applied for workers' compensation and was found ineligible when she did subsequently apply.   The Plaintiff contends that her allegations are sufficient and the perceived shortcomings cited by the Defendants result only from their own misconduct.

The Court finds that the Plaintiff's allegations state a claim for workers' compensation discrimination under West Virginia Code § 23-5A-1 and § 23-5A-3(a).   She has alleged that she suffered an on-the-job injury that rendered her temporarily unable to perform her job duties and that she was discharged as a result.   Although she continued to report to work, at the direction of her employer, she spent her workdays sitting in her truck icing her injuries.   Because she was

unable to perform any job duties, she was effectively "off work."   She has also alleged that the Defendants interfered with her efforts first to obtain medical care, and then to apply for workers' compensation benefits, including by withholding medical records that supported her eligibility for temporary total disability benefits.   Accepting the Plaintiff's allegations as true, the Defendants' position is essentially that their misconduct (in requiring her to be physically present at the workplace) and attempts to evade the workers' compensation reporting system should bar the Plaintiff's otherwise valid claim.   The Court declines the opportunity to endorse that position. Because the Plaintiff has adequately alleged a workers' compensation discrimination claim, the Court finds that the partial motion to dismiss must be denied.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the Defendants' *Partial Motion to Dismiss* (Document 8) be **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:        May 5, 2020

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

7